# HENRY LONG v. HELENA KIRBY-SMITH.
# HENRY LONG v. EPHRIAM KIRBY-SMITH.
## —292 S. W. (2d) 216.

Middle Section. February 28, 1956.

Petition for Certiorari denied by Supreme Court, July 20, 1956.

448

Frank Hickerson, Winchester, for Helena Kirby-Smith and Ephriam Kirby-Smith.

Ben Kingree, Jr., Shelbyville, and John F. Green, Winchester, for Henry Long.

FELTS, J. These are actions by Mr. and Mrs. Kirby-Smith for damages growing out of an accident involving an automobile owned by him and driven by her, a pickup truck owned and driven by Henry Long, and a coal truck owned by S. T. Nichols and driven by his servant Clyde Owens. Mrs. Kirby-Smith sued for personal injuries; Mr. Kirby-Smith, for damages to his car.

The negligence charged in each declaration was that the coal truck turned over in the highway at night; that the pickup truck came up and stopped beside the coal truck; that defendants negligently allowed both trucks to remain there obstructing the highway, without any light, flares, torches, or anything to warn travelers of the danger; and that Mrs. Kirby-Smith, approaching the obstruction over the crest of the hill, could not see it in time to avoid it but collided with the pickup truck.

Defendants filed general pleas of not guilty. Later, pursuant to an agreement made by plaintiffs with defendants Nichols and Owens, their respective counsel approved an order entered by the Trial Judge dismissing the suits as to these two defendants. Thereafter, the remaining defendant, Henry Long, represented by other counsel, filed special pleas averring that plaintiffs had

"settled" the suits and discharged Nichols and Owens, joint tort-feasors with Long; and that the discharge of them also discharged him.

Plaintiffs filed replications denying that they had settled the suits or discharged Nichols and Owens, but averring that they had only made a covenant not to sue Nichols and Owens, exhibiting a copy thereof, and denying that defendant Long, as a joint tort-feasor, was released or discharged from liability.

The issues thus joined between plaintiffs and defendant Long were submitted to a jury, under instructions as to which there is no complaint, and the jury found the issues in favor of plaintiffs and rendered general verdicts for plaintiffs—a verdict for Mrs. Kirby-Smith for $500 and a verdict for Mr. Kirby-Smith for $650. The Trial Judge approved the verdicts and entered judgments thereon.

Defendant appealed in error and insists that the Trial Judge should have directed verdicts for him upon his special pleas of release and discharge. So, the sole, determinative question is, whether upon the evidence the Trial Judge was bound to take the averments of these pleas to be true, as a matter of law, and direct verdicts thereon for defendant, or whether he should have submitted these issues to the jury, as he did.

It appears from the evidence that the insurer of Nichols and Owens paid $1,500 to plaintiffs and they signed a paper agreeing not to sue Nichols and Owens, expressly declaring it was not a release of their causes of action, and reserving their right to sue any other person thereon. This paper need not be quoted. Learned counsel for defendant concede that "this instrument is a 'covenant not

to sue' and not a release", under Smith v. Dixie Park & Amusement Co., 128 Tenn. 112, 157 S. W. 900, and later cases.

In their excellent brief, counsel for defendant say: "Plaintiff in error does not rely upon this instrument to sustain his plea of accord and satisfaction. The instrument itself is relied on by plaintiffs to sustain their replication." Defendant relies on the orders approved by plaintiffs' counsel and entered by the Trial Judge, dismissing the suits as to Nichols and Owens. These orders, except the names, were the same in each case, and we quote one of them, omitting its caption:

### Order

"Comes the plaintiff, Helena Kirby-Smith, and moves the Court for permission to take a non-suit as to Clyde Owens, individually, and S. T. Nichols.

"It is, therefore, ordered by the Court that this cause be and the same is hereby dismissed with full prejudice as to Clyde Owens, as Agent and Servant of S. T. Nichols, Clyde Owens, individually, and S. T. Nichols.

"/s/  Alan S. Kelly
Circuit Judge.

"Approved:

"/s/  Frank Hickerson
"Attorney for Plaintiff.

"/s/  Harry C. Templeton
"Attorney for Defendants,
"Clyde Owens and S. T. Nichols."

Thus it appears that though plaintiffs signed the covenant not to sue, they did not sign these orders. Nor is there any evidence that they consented to or authorized the entry of these orders. It seems a reasonable inference that their counsel, acting as such, undertook to carry out their covenant not to sue the covenantees, and approved the orders of dismissal for that purpose only.

It is, of course, conceded that while a release of one of several joint tort-feasors extinguishes the cause of action and releases all of them, a covenant not to sue one of them does not affect the right to sue the others, Nashville Interurban Ry. Co. v. Gregory, 137 Tenn. 422, 193 S. W. 1053; and that a plaintiff may dismiss his action or take a nonsuit as to any one or more of the defendants and proceed against the others, T. C. A. secs. 20-1310, 28-106.

Learned counsel, while conceding that the paper signed by plaintiffs was not a release, insist that the orders approved by their counsel was a release; that such orders dismissing the suits "with full prejudice as to" Clyde Owens and S. T. Nichols, amounted to a "final judgment on the merits", operated as "res adjudicata", and barred any future suit by plaintiffs on the same cause; and that this extinguished the cause of action and discharged all the tort-feasors, including defendant.

For this insistence, counsel rely on Byrd v. Crowder, 166 Tenn. 215, 60 S. W. (2d) 171. There, the plaintiff signed a paper in the form of a covenant not to sue but with the added provision that it might "be pleaded *as a defense* to any action" that might be brought by plaintiff against the covenantees in breach of this covenant. This was held in effect a release and not a covenant not to sue.

■ That case is clearly not in point. There, the paper signed by plaintiff was simply construed as a release rather than a covenant not to sue. Here, the paper signed by plaintiffs is admittedly a covenant not to sue. These orders of dismissal were not signed by plaintiffs, and in the absence of any evidence that they were authorized by plaintiffs, it cannot be ruled, as a matter of law, that they became part of plaintiffs' covenant not to sue.

While counsel for defendant refer to his defense as one of "accord and satisfaction", there was no proof of any accord or satisfaction. The real defense relied on is not based on plaintiffs' covenant not to sue but upon the orders entered by their counsel; that is, the defense relied on is one not of accord and satisfaction but of *res judicata* or estoppel by judgment. Defendant's insistence is that a verdict should have been directed for him upon that defense.

■ A party relying on the defense of *res judicata*, or estoppel by judgment, has the burden of proving it, and must show that the right in question was determined on the merits in the former judgment. If the judgment itself leaves the matter uncertain, then it must be proved by evidence *aliunde*. Carter County v. Street, 36 Tenn. App. 166, 173, 252 S. W. (2d) 803, 806, and cases there cited; Ragsdale v. Hill, 37 Tenn. App. 671, 682, 269 S. W. (2d) 911, 917, and cases there cited.

" 'There must have been a right adjudicated or released in the first suit to make it a bar [in the second], and this fact must appear affirmatively. * * * Suits are often dismissed by the parties, and a general entry is made to that effect, without incorporating in the record, or even placing on file the agreement. It may settle nothing, or it may settle the en-

tire dispute. If the latter, there must be a proper statement to that effect to render it available as a bar. But the general entry of the dismissal of a suit by agreement is evidence of an intention, not to abandon the claim on which it is founded, but to preserve the right to bring a new suit thereon, if it becomes necessary.' '' Lindsay v. Allen, 112 Tenn. 637, 762, 82 S. W. 171, 174, quoting approvingly from Haldeman v. United States, 91 U. S. 584, 23 L. Ed. 433.

In the case before us there is no proof that there was any trial or judgment on the merits of plaintiffs' cause against Nichols and Owens. The order of dismissal, above quoted, does not recite or show that it was a judgment on the merits. It shows that it was based on a motion ''for permission to take a nonsuit as to'' Owens and Nichols, and that the cause was dismissed with full prejudice as to Owens and Nichols.

The words ''dismissed with full prejudice as to ''Owens and Nichols, relied on by defendant, do not themselves constitute a *res judicata*. They are not in the form of a final judgment at law; they do not say such prejudice is against the right of plaintiffs to sue Nichols and Owens again on the same cause; they are in themselves ambiguous and uncertain, and yield their meaning only when read with plaintiffs' covenant not to sue, in furtherance of which the orders were evidently entered.

In the annotation, ''Consent Judgment as Res Judicata'', 2 A. L. R. (2d) 514, a large number of cases are collected from the various states; and the annotator has deduced from such cases some helpful rules for determing the extent of the estoppel or bar of judgments entered by consent. In one of such rules he says:

"The extent to which a judgment or decree entered by consent is conclusive in a subsequent action should be governed by the intention of the parties as expressed in the agreement which is the basis of the judgment and gathered from all the circumstances, rather than by a mechanical application of the general rules governing the scope of estoppel by judgment * * *." 2 A. L. R. (2d) 520.

■ So we think these orders of dismissal must be read and construed with the covenant not to sue, on which such orders were based, and when so read and construed, the words "dismissed with full prejudice as to" Owens and Nichols, must be held to mean dismissed with the full prejudice provided for in plaintiffs' covenant not to sue. That instrument, following the form in Smith v Dixie Park Amusement Co., supra, expressly provided:

"It is further expressly understood this instrument may be pleaded as a set off or Recoupement of any action of any kind whatsoever, brought, instituted or taken by or on behalf of the undersigned on account of said supposed claim or claims against said Mrs. Louellon Nichols and husband, S. T. Nichols, and Clyde Owens."

■ Thus, the covenant not to sue expressly saved plaintiffs' right to sue all the tort-feasors, and the above quoted provision recognized that plaintiffs might exercise this right and might again sue Nichols and Owens, and stipulated that if plaintiffs did bring such action, this covenant might be pleaded, not as a "defense" or bar, as in Byrd v. Crowder, supra, but only as "a set off or Recoupment", as provided in covenants not to sue. Nashville Interurban Ry. Co. v. Gregory, supra.

■ There is, we think, another reason why this order, entered on motion for "non-suit", but containing the words "dismissed with full prejudice", should be construed with the covenant not to sue, and held to be a mere dismissal or nonsuit at common law, in furtherance of the covenant not to sue, rather than an equity decree dismissal barring the right to sue again. That reason is that the Trial Court had no jurisdiction to enter such a decree.

■ It is true that in courts of equity all decrees of dismissal operate as *res judicata* and bar the right to sue again, unless they are expressed to be "without prejudice". "A former decree merely dismissing the bill, if not expressed to be without prejudice, is conclusive of the matters of litigation: Williams v. Hollingsworth, 5 Tenn. 358; 2 Sto. Eq. Jur., sec. 1523", Chancellor, later Justice, William F. Cooper, in Parkes v. Clift, 77 Tenn. 524, 532.

■ It is likewise true that a court of equity, in dismissing a bill, has a rather broad discretion as to whether such dismissal shall be expressed to be "without prejudice" to the right to sue again, or a mere dismissal which in itself operates as *res judicata* and a bar to the right to sue again. Gibson's Suits in Chancery (4th ed.) secs. 523, 570, and cases there cited.

■ But this practice of dismissals "with prejudice", or "without prejudice", originally prevailed only in courts of equity. There was no such practice at common law. In many states now, however, the separation between courts of equity and courts of law has been abolished, and courts, exercising both classes of jurisdiction, may enter judgments or decrees "without prejudice" to

the right to sue again, or "with prejudice" to such right. 2 Freeman on Judgments (5th ed.) secs. 751, 757, 760-762; see cases collected in annotation, 149 A. L. R. 553.

But, as is well known, Tennessee still preserves separate courts of law and courts of equity, and the common-law courts in this state observe the practice as it existed at common law, with one exception as hereinafter shown.

■ At common law a nonsuit, a discontinuance, or a *non prosequitur,* entered by the court, merely ended that particular suit but did not bar plaintiff's right to sue defendant again on the same cause of action. A *retraxit,* however, entered by the court was a bar of plaintiff's right to sue again on the same cause of action. Lindsay v. Allen, supra, 112 Tenn. 651, 82 S. W. 174; 3 Blackstone Commentaries, (Lewis ed.) 1900, pp. 295-296; 2 Freeman on Judgments (5th ed.) secs. 755-757.

Blackstone explains the difference between a *retraxit* and a nonsuit as follows: "A *retraxit* differs from a non-suit in that the one is negative and the other positive; the nonsuit is a mere default and neglect of the plaintiff, and therefore he is allowed to begin his suit again upon payment of costs; but a *retraxit* is an open and voluntary renunciation of his suit in court, and by this he forever loses his action" (3 Comm. 296).

■ The exception, above mentioned, is that the rule of *"retraxit"* does not prevail in this state. Said the Court in Lindsay v. Allen, supra, 112 Tenn. 654, 82 S. W. 174; "We have no case in this state applying the rule of 'retraxit,' and we shall not now adopt it".

■ ■ Nor do the common-law courts in this state have jurisdiction, like courts of equity, to enter decrees dismissing actions "without prejudice" to plaintiff's

right to sue defendant again on the same cause, or "with prejudice" to such right. The decisive test is whether the judgment of dismissal was on the merits (2 Freeman on Judgments, 5th ed., secs. 723-725). If it was not, it is not *res judicata* or a bar; if it was, it is a bar, and the court has no power to say it shall be "without prejudice" to sue again. Dodd & Son v. Nashville C. & St. L. Railway Co., 120 Tenn. 440, 446, 110 S. W. 588, 590.

In the Dodd case there was a trial on the merits. The judge found the issues for defendant and "dismissed the suit of the plaintiffs". The Court of Civil Appeals found plaintiffs had failed to save a proper bill of exceptions, but concluded that they were entitled to recover, and affirmed but directed the dismissal to be "without prejudice" to their right to sue again. The Supreme Court, reversing, said:

"The Court of Civil Appeals was without jurisdiction to dismiss plaintiffs' suit without prejudice. There is *no such practice known to the courts of common-law jurisdiction* of this State. *Only courts of equity* have jurisdiction to dismiss cases without prejudice to the right of the complainant to bring another suit upon the same cause of action. * * * (Italics ours.)" 120 Tenn. 446, 110 S. W. 588, 590.

In the case before us it appears the dismissal was not on the merits but on a motion for a "nonsuit". Such a dismissal was within the power of the Trial Court at common law and under our statutes, T. C. A. secs. 20-1310, 20-1311, 28-106. Since the court had power to enter a nonsuit, but not to decree a dismissal "with prejudice", we think the order must be treated as a mere nonsuit and the words "with full prejudice" disregarded as surplusage.

■ It is argued, however, that, without regard to its effect as *res judicata,* this order is really a consent decree, which is in effect a contract binding on the parties according to its terms. Barretsville Bk. & Tr. Co. v. Bolton, 182 Tenn. 364, 373, 187 S. W. (2d) 306.

It is true that a consent decree is binding according to its terms upon those who consent, sign, or authorize it. But there is no evidence that plaintiffs signed, consented to, or authorized the entry of this order. Therefore, no verdict can be directed for defendant on this order as a consent decree.

Finally, there is another and stronger reason why this order cannot be held a dismissal "with prejudice"—in effect, a *retraxit*—so as to operate as *res judicata* and bar the right of plaintiffs to sue again on this cause of action.

"Attorneys have no power to surrender substantial rights of their clients without express authority. 3 Am. & Eng. Enc. of Law (2d Ed.) 357; Holms v. Johnston, 12 Heisk. [155] 158". Davis v. Home Insurance Co., 127 Tenn. 330, 337, 155 S. W. 131, 133, 44 L. R. A., N. S., 626.

■ An attorney, merely by virtue of his employment as such, has no implied authority to release a claim or cause of action, or otherwise give up the rights of his client. While he has implied authority to agree to a dismissal or nonsuit, which does not bar the right to sue again, he has no such authority to agree to the entry of a *retraxit* or an equity dismissal "with prejudice", which would bar the right to sue again. 5 Am. Jur., Attorneys at Law, secs. 96, 97; Annotation, 30 A. L. R. (2d) 994, 995.

These orders, if allowed to operate as contended by defendant, would amount to a surrender, a release, and an extinguishment of the right of plaintiffs to sue again on this cause of action. As before stated, there is no evidence that plaintiffs, or either of them, either signed these orders, or authorized their counsel to approve them for entry. In the absence of such evidence, no verdict can be directed for defendant on such orders.

For these reasons, all of defendant's assignments of error are overruled, the judgment of the Circuit Court is affirmed, judgments will be entered here for plaintiffs against defendant for the respective amounts of the judgment below, with interest, and the costs of the appeal in error. Such costs are also adjudged against the surety on defendant's appeal bond.

Hickerson, J., not participating.

Avery, P. J. (Western Section), concurs.

Shriver, J., dissenting.